UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Case No. 11-56297

BRIAN D. KLEIN                                  Chapter 7

and                                             Judge Thomas J. Tucker

ERICA M. KLEIN,

        Debtors.
_____/

OPINION REGARDING GENISYS CREDIT UNION'S MOTION
SEEKING ABANDONMENT OF PROPERTY OF THE ESTATE

## I. Introduction

This contested matter requires the Court to decide whether Genisys Credit Union's

security interest in a 2004 Pontiac Grand Am (the "Vehicle") owned by the Debtor, Erica M.

Klein ("Klein"), was perfected as of the date on which Klein filed her Chapter 7 bankruptcy

petition.  The Chapter 7 Trustee argues that the security interest was not perfected.  The Trustee

points out that Genisys's security interest is not noted on the certificate of title for the Vehicle,

and that the certificate states that there is "No Secured Interest on Record."  Genisys argues that

this is due to an error by the Michigan Secretary of State's office, and that Genisys did everything

that Michigan law required it to do in order to perfect its security interest.  As a result, Genisys

says, the security interest is perfected, relying on *Frank v. Second Nat'l Bank of Saginaw* (*In re*

*Gilbert*), 82 B.R. 456, 461 (Bankr. E.D. Mich. 1988), among other cases.  The Trustee disagrees,

arguing that Genisys did not do everything required by Michigan law for perfection.

For the reasons stated in this opinion, the Court concludes that Genisys's security interest

was perfected.

## II. Jurisdiction

This Court has subject matter jurisdiction over this bankruptcy case and this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (K). This matter also is "core" because it falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen (In re Trans-Industries, Inc.)*, 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," namely, the Trustee's avoidance power under Bankruptcy Code § 544(a)(1) and the Court's authority to order the Trustee to abandon property of the bankruptcy estate under Bankruptcy Code § 554(b). And this is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases."

## III. Background

### A. Procedural history

This dispute began when Genisys filed its motion entitled "Motion for Relief from the Automatic Stay, Entry of Order Waiving FRBP 4001(a)(3), and Order Compelling Trustee to Abandon Property of the Estate" (the "Motion").[1] The Motion alleged that Genisys had a perfected security interest in the Vehicle, and that the amount owed to Genisys on its secured claim exceeded the Vehicle's market value, so that there was no equity for the bankruptcy estate. The Motion sought relief from stay under 11 U.S.C. § 362(d), so that Genisys could repossess the

---

[1] Docket # 42.

2

Vehicle and sell it. And the Motion sought an order compelling the Trustee to abandon the Vehicle under 11 U.S.C. § 554(b), because the Vehicle had no value to the estate.

The Chapter 7 Trustee filed an objection to the Motion.[2] The Trustee argued, among other things, that Genisys's lien was unperfected and subject to avoidance under 11 U.S.C. § 544(a)(1), because (1) Genisys was not listed as a secured party on the certificate of title to the Vehicle, and (2) Genisys's application for a certificate of title that was filed with the Michigan Secretary of State failed to contain certain information that is required under Mich. Comp. Laws § 257.217.

During the first hearing on the Motion, Genisys withdrew its request for relief from the automatic stay, but continued to seek abandonment under 11 U.S.C. § 554(b). The Trustee and Genisys agreed to the Trustee selling the Vehicle, so that their dispute over perfection would shift to the proceeds of the sale. The Trustee moved for and obtained an order authorizing him to sell the Vehicle, and he sold it to a third party for $4,000.00.[3] The order authorizing the sale stated that all liens in the vehicle "shall attach to the proceeds of the sale to the same extent as they attached to the Vehicle."[4] The sale order also stated that "[t]he Trustee shall hold the proceeds from the sale of the Vehicle until the dispute over the avoidability of the purported interest of Genisys Credit Union is resolved."[5]

---

[2] Docket # 43.

[3] *See* Docket ## 48 (sale motion) and 54 (sale order).

[4] Docket # 54.

[5] *Id.* The Trustee later moved for and obtained, without objection, an order surcharging the lien of Genisys (to the extent the Court determines that the lien is valid), for the Trustee's payment of insurance on the Vehicle, in the amount of $415.60. (*See* Docket ## 63, 65.)

3

During the first hearing on the Motion, the parties consented to the Court resolving the dispute over Genisys's lien as part of resolving Genisys's abandonment motion, without requiring either party to file an adversary proceeding.[6]  Further briefing and filings followed, and the facts and the arguments of the parties developed over the course of two more hearings.  The Motion is now ready for decision.

The parties agree that if the Court finds that Genisys's security interest was not perfected under Michigan law as of the bankruptcy petition date, then the Trustee is entitled to all of the sale proceeds from the Vehicle.  On the other hand, if the Court finds that Genisys's security interest was perfected, then Genisys is entitled to all of the sale proceeds, minus the small surcharge for insurance described in footnote 5 above.

**B.  Facts**

The Court's decision on perfection in this case requires a rather detailed review of the facts.

The Trustee and Genisys have filed a list of stipulated facts and a set of stipulated exhibits.[7]  The parties agree that the documents in Exhibit B of the stipulated exhibits "were the only documents on file with the [Michigan] Secretary of State relative to the Debtor's ownership of the vehicle and constitute the title history of the 2004 Pontiac Grand Am . . . relative to the Debtor."[8]

---

[6] *See* "Order Regarding Genisys Credit Union's Motion for Relief from Stay and Abandonment" (Docket # 46) at ¶ 2.

[7] Docket ## 51, 50.

[8] Docket # 50 at ¶ 5.

4

**1. The first title application filed, and first certificate of title issued, listing Debtor as owner of the Vehicle (and listing the security interest of Capital One Auto Finance)**

The stipulated facts and exhibits show the following undisputed facts. The Vehicle was previously owned by Charlene Renee White-Bryant, whose name appears as the owner on a certificate of title dated October 12, 2005. Her title stated that there was "no secured interest" in the Vehicle on record. The front of this certificate indicates that Ms. White-Bryant assigned the Vehicle title to Art Moran Pontiac GMC, Inc. ("Art Moran") on December 29, 2009. The back of the certificate of title contains a section captioned "For Dealer Use Only," in which Art Moran assigned the title to the bankruptcy Debtor, Erica M. Klein ("Klein"), on January 22, 2010. This section, which was signed by both Art Moran and Klein, stated an odometer reading of 72,154 miles.[9]

Klein and Art Moran signed an agreement on or about January 22, 2010, for Klein's purchase of the Vehicle.[10] Art Moran delivered the vehicle to Klein on January 22, 2010.[11] That same day, Art Moran and Klein completed and signed a document entitled "Application for Michigan Title & Registration/Statement of Vehicle Sale."[12] That title application, which was on a Michigan Secretary of State form, listed Art Moran as the Dealer, Klein as the Owner, and Capital One Auto Finance as the "First Secured Interest" in the Vehicle. The title application was signed by an agent of Art Moran and by Klein, whose signature was dated January 22,

---

[9] Docket # 51, Ex. B, pdf pp. 16-17.

[10] Docket # 50 at ¶ 2.

[11] Docket # 51, Ex. B, pdf p. 14 ("Delivery Date" stated in upper left-hand corner).

[12] *Id.*

5

2010.[13]  These parties also signed an "Odometer Disclosure Statement," also on a Michigan

Secretary of State form, that listed Art Moran as the Transferor of the Vehicle and Klein as the

Transferee.  The Statement was dated January 22, 2010, and it listed an odometer reading of

72,154 miles.[14]

These forms were sent to the Michigan Secretary of State, who issued a certificate of title

for the Vehicle, dated January 27, 2010.  That certificate listed the Owner as Erica M. Klein, and

the "First Secured Party," as Capital One Auto Finance.  The box listing this First Secured Party

stated a "Filing Date" of January 26, 2010.[15]

>    **2.  The second title application filed (listing the security interest of Genisys Credit
>        Union), and the second certificate of title issued listing Debtor as owner of the
>        Vehicle**

A short time later, Art Moran and Klein made a new contract for Klein's purchase of the

Vehicle, dated February 6, 2010.[16]  The parties made this new contract so that Klein could

finance her purchase of the Vehicle with Genisys, rather than with the original lender Capital

One Auto Finance.  The new contract was titled "Retail Installment Contract and Security

Agreement."  Under this Agreement, the purchase of the Vehicle was to be financed in the total

amount of $9,285.70.  The Agreement granted a security interest in the Vehicle to Art Moran.

But in the same document, Art Moran assigned its security interest to "Genisys Credit Union."[17]

---

[13]  *Id.*

[14]  *Id.* at pdf p.15.

[15]  *Id.* at pdf p.12.

[16]  Docket # 50 at ¶ 1; Docket # 51, Ex. A, pdf pp. 3-4.

[17]  Docket # 51, Ex. A, pdf p. 3.

Art Moran then prepared a new title application. This one was on a Secretary of State form entitled "Application for Michigan Vehicle Title." But this form was an outdated form. We know this because at the bottom of the page, the form listed "Candice S. Miller, Secretary of State."[18] At the time of these events, the Michigan Secretary of State was Terri Lynn Land, who had succeeded Candice S. Miller more than seven years earlier, beginning on January 1, 2003.[19] The official title application form in use at the time of these events listed Terri Lynn Land as the Secretary of State at the bottom.

The application listed the Owner as Erica Klein and the "First Secured Party" as "Genisys Credit Union." In the upper left-hand corner of the form, in the box titled "Transaction Type," the words "CORRECTION/LIEN HOLDER" were typed in. The application was signed by Klein.[20]

In addition to being an outdated form, the title application form was not completely filled out. In the box labeled "ODOMETER" no odometer reading was listed, and in the box labeled "CLAIM FOR TAX EXEMPTION," which provides for a reason to be stated for tax exemption,

---

[18]  Docket # 51, Ex. B, pdf p. 10.

[19]  Candice S. Miller was Michigan's Secretary of State from 1995 through 2002. *Michigan Secretaries of State*, MICHIGAN.GOV, http://www.michigan.gov/sos/ 0,4670,7-127-1640_9105_61239---, 00.html (last visited Nov. 9, 2012). Terri Lynn Land was Michigan's Secretary of State from January 1, 2003 until December 31, 2010, when she was succeeded by the current Secretary of State, Ruth Johnson. THE LEGISLATIVE COUNCIL, STATE OF MICHIGAN, MICHIGAN MANUAL 2009-2010, IV at 26 (Christopher J. Carl, ed., Legislative Service Bureau 2010), *available at* http://www.legislature.mi.gov/documents/ publications/michiganmanual/2009-2010/09-10_MM_IV_pp_26_Land.pdf (last visited Nov. 9, 2012).

[20]  Docket # 51, Ex. B, pdf p. 10.

nothing was filled in. And the box for listing the Owner's driver's license number was left blank.[21]

Art Moran sent this title application to the Michigan Secretary of State, along with a document dated February 10, 2010, in which Capital One Auto Finance stated that it was releasing its lien in the Vehicle.[22] The Secretary of State must have received these documents no later than February 24, 2010, because that is the issue date of the new certificate of title for the Vehicle, discussed below.[23]

### 3. The Secretary of State's error in issuing the new, second title in Debtor's name, without noting on the certificate the security interest of Genysis Credit Union

Even though the title application was on an outdated form, and was not fully filled in, as described above, the Secretary of State's office did not send the application back for corrections. Instead, and apparently as a courtesy, someone at the Secretary of State's office typed out a new "Application for Michigan Vehicle Title" form, and then used that retyped form to issue a new certificate of title for the Vehicle.[24] This retyped application form correctly listed at the bottom, "Terri Lynn Land, Secretary of State." This form was not signed by Erica Klein, or by Art Moran or Genisys. In the "TRANSACTION TYPE" box the words typed in were "CORRECTION TITLE ONLY," and in the "CLAIM FOR TAX EXEMPTION" box a reason for exemption was

---

[21] *Id.*

[22] *Id.* at pdf pp.10-11.

[23] Docket # 51, Ex. C at pdf p. 19.

[24] Genysis contends that this is what happened, and the Trustee concedes that this "is likely what in fact did occur." Trustee's Supplemental Brief (Docket # 57) at 3-4. Specifically, the Trustee states that what "likely did in fact occur" is that "the Secretary of State inexplicably created" this new application form, "omitting Genisys as a secured party through no fault of Genisys." *Id.* at 3.

8

typed in, namely "ADD LEIN." And on this form the odometer reading was typed in the "ODOMETER" box: "072154 A." (The odometer reading must have been taken from the certificate of title that had been issued on January 27, 2010, and from the Odometer Disclosure Statement submitted with the earlier title application, since no new Odometer Disclosure Statement had been submitted to the Secretary of State's office.) And a number was typed in the box for the Owner's driver's license number.[25]

This unsigned, retyped Application for Michigan Vehicle Title form appears to have been prepared by the Secretary of State's office only in order to use the current form, listing the current Secretary of State, rather than the previous Secretary of State. The parties have not pointed to any other substantive differences between the two forms, and there appear to be none.

But in apparently trying to do a good deed and be helpful, the Secretary of State's office made a significant error in retyping the title application form. In the box labeled "First Secured Party," instead of listing Genisys, the form stated "NONE." Not only was this inconsistent with the signed title application form that Genisys/Art Moran had submitted, but also it was inconsistent with another provision typed onto the retyped form — further down on the form the Secretary of State had typed in, as the reason for a claimed tax exemption, "ADD LEIN."[26] So the Secretary of State's retyped form was internally inconsistent, regarding whether there were any liens on the Vehicle.

This clerical error by the Secretary of State's office was carried over onto the new certificate of title that the Secretary of State issued for the Vehicle, which had the issue date of

---

[25] Docket # 51, Ex. B at pdf p. 9.

[26] *Id.*

9

February 24, 2010. That new certificate listed the Owner as Erica M. Klein, but did not list any secured party. Rather, it stated "NO SECURED INTEREST ON RECORD."[27]

This certificate of title was the title for the Vehicle, as it existed on the date the Debtor filed her bankruptcy petition, June 10, 2011.[28]

## IV. Discussion

### A. Framing the dispute

Bankruptcy Code § 544(a)(1) provides:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or any other creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such creditor exists.

11 U.S.C. § 544(a)(1). "The 'strong arm' clause of the Bankruptcy Code, 11 U.S.C. § 544(a), grants a bankruptcy trustee the power to avoid transfers of property that would be avoidable by certain hypothetical parties." *Simon v. Chase Manhattan Bank* (*In re Zaptocky*), 250 F.3d 1020, 1023 (6th Cir. 2001). "As a hypothetical judgment lien creditor, the trustee is deemed to have perfected his interest as of the date of the filing of the bankruptcy petition." *Drown* v. *Perfect* (*In re Giaimo*), 440 B.R. 761, 765 (B.A.P. 6th Cir. 2010) (citing *Palmer v. Washington Mut. Bank* (*In re Ritchie*), 416 B.R. 638, 643 (B.A.P. 6th Cir. 2009)). "Under § 544(a)(1), if a lien against

---

[27] Docket # 51, Ex. C.

[28] Docket # 50 at ¶ 6.

the debtor's property was improperly perfected, or not perfected at all, before the bankruptcy petition was filed, the trustee may take priority." *Id*. A trustee carries the burden of proof to show the applicability of § 544(a)(1). *Graham v. Huntington Nat'l Bank* (*In re MedCorp, Inc.*), 472 B.R. 444, 450 (Bankr. N.D. Ohio 2012).

In this case, the Trustee and Genisys agree on the following points: (1) if, on the one hand, Genisys's security interest in the Vehicle was not perfected as of the bankruptcy petition date, the Trustee can avoid that security interest under § 544(a)(1), and is entitled to all of the proceeds from his sale of the Vehicle; (2) if, on the other hand, Genisys's security interest was perfected as of the bankruptcy petition date, its security interest is not avoidable, and Genisys is entitled to all of the sale proceeds of the sale of the Vehicle, minus the Trustee's $415.60 surcharge for insurance; and (3) the issue of perfection is determined by Michigan law.

### B. Michigan law regarding perfection of a security interest in a motor vehicle

### 1. General principles

As discussed in more detail below, under Michigan law, the only way to perfect a security interest in a motor vehicle is to file with the Michigan Secretary of State "a properly tendered application for a certificate of title on which a security interest in a vehicle is to be indicated." *See* Mich. Comp. Laws § 257.217(10). This "is a condition of perfection of a security interest in the vehicle and is equivalent to filing a financing statement under the uniform commercial code." *Id*.; s*ee also* Mich. Comp. Laws § 440.9311(2); *see generally Boyd v. NBD Bank* (*In re Thomas*), 231 B.R. 8, 10 (Bankr. W.D. Mich. 1999)(creditor's failure to comply with filing requirement of Mich. Comp. Laws Ann. § 257.238(a)(2) caused its security interest in vehicle to be unperfected as of the filing date of the debtor's bankruptcy petition); *Frank v. Second Nat'l Bank of Saginaw*

11

(*In re Gilbert*), 82 B.R. 456, 461 (Bankr. E.D. Mich. 1988)("[T]he Michigan legislature has directed that the filing of a proper application for title is the sole prerequisite for the perfection of a security interest in an automobile."); *Remes v. Ford Motor Credit Co*. (*In re Churchwell*), 80 B.R. 855, 860 n.7 (Bankr. W.D. Mich. 1987)(citations omitted)("In Michigan, to perfect a security interest in a motor vehicle, an application must be filed with the Secretary of State which states the name and address of the secured party.").

In this case, it is undisputed that Genisys's security interest in the Vehicle was not noted on the certificate of title. But this does not necessarily mean that the security interest was unperfected. Rather, perfection turns on whether a proper application for a certificate of title noting the Genisys security interest was filed with the Secretary of State.

### 2. The relevant Michigan statutes

As with automobiles generally in Michigan, the Debtor's Vehicle was subject to Chapter II of the Michigan Vehicle Code, which is codified at Mich. Comp. Laws §§ 257.201 through 257.259. Among other things, Chapter II of the Michigan Vehicle Code subjects motor vehicles to certificate of title and registration requirements. *See, e.g.*, Mich. Comp. Laws §§ 257.215, 257.216, 257.217, 257.33, and 257.79. Under Article 9 of the Uniform Commercial Code, as adopted in Michigan, "the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to" Chapter II of the Michigan Vehicle Code. *See* Mich. Comp. Laws § 440.9311(1)(b)(i); *see also* Mich. Comp. Laws § 440.9310(2)(c). Rather, "[c]ompliance with the requirements of" Chapter II of the Michigan Vehicle Code "for obtaining priority over the rights of a lien creditor is equivalent to the filing of a financing statement under this article." Mich. Comp. Laws § 440.9311(2). With certain exceptions not applicable here, "a

security interest in property subject to" Chapter II of the Michigan Vehicle Code "may be

perfected only by compliance with those requirements . . . ." *Id.*

The relevant provisions in Chapter II of the Michigan Vehicle Code, in turn, are Mich.

Comp. Laws §§ 257.217, 257.238, and 257.222. Section 257.217 contains requirements for

obtaining a certificate of title and registration for a vehicle, and for perfecting a security interest

in a vehicle. The provisions in this lengthy section that are relevant to the present dispute are the

following:

> (1) An owner of a vehicle that is subject to registration under this
> act shall apply to the secretary of state, upon an appropriate form
> furnished by the secretary of state, for the registration of the
> vehicle and issuance of a certificate of title for the vehicle. . . . The
> application shall be accompanied by the required fee. An
> application for a certificate of title shall bear the signature or
> verification and certification of the owner. The application shall
> contain all of the following:
>
> (a) The owner's name, the owner's bona fide residence, and
> either of the following:
>
> (i) If the owner is an individual, the owner's mailing address.
> . . .
>
> (b) A description of the vehicle including the make or name,
> style of body, and model year; the number of miles, not including
> the tenths of a mile, registered on the vehicle's odometer at the
> time of transfer; . . . vehicle identification number; and the
> vehicle's weight fully equipped, if a passenger vehicle registered in
> accordance with section 801(1)(a) . . . .
>
> (c) A statement of the applicant's title and the names and
> addresses of the holders of security interests in the vehicle and in
> an accessory to the vehicle, in the order of their priority.
>
> (d) Further information that the secretary of state reasonably
> requires to enable the secretary of state to determine whether the
> vehicle is lawfully entitled to registration and the owner entitled to
> a certificate of title . . . .

13

. . .

(4) Except as provided in subsection (5), a dealer selling, leasing, or exchanging vehicles required to be titled, within 15 days after delivering a vehicle to the purchaser . . . shall apply to the secretary of state for a new title, if required, and transfer or secure registration plates and secure a certificate of registration for the vehicle . . ., in the name of the purchaser. . . .  The purchaser . . . of the vehicle . . . shall sign the application, . . . and other necessary papers to enable the dealer or person to secure the title, registration plates, and transfers from the secretary of state.  If the secretary of state mails or delivers a purchaser's certificate of title to a dealer, the dealer shall mail or deliver the certificate of title to the purchaser not more than 5 days after receiving the certificate of title from the secretary of state.

. . .

(7) An application for a certificate of title that indicates the existence of a security interest in the vehicle . . . , if requested by the security interest holder, shall be accompanied by a copy of the security agreement which need not be signed . . . .

. . .

**(10) Receipt by the secretary of state of a properly tendered application for a certificate of title on which a security interest in a vehicle is to be indicated is a condition of perfection of a security interest in the vehicle and is equivalent to filing a financing statement under the uniform commercial code, . . . MCL 440.1101 to 440.11102, with respect to the vehicle.  When a security interest in a vehicle is perfected, it has priority over the rights of a lien creditor as lien creditor is defined in section 9102 of the uniform commercial code, . . . MCL 440.9102.**[29]

Mich. Comp. Laws § 257.217 (emphasis added).

Section 257.238(a) provides the procedure to be followed when an owner of a vehicle

with an existing certificate of title grants a security interest in the vehicle:

---

[29]  Under Mich. Comp. Laws § 440.9102(1)(zz), the definition of a "lien creditor" includes "(iii) [a] trustee in bankruptcy from the date of the filing of the petition."

(a) Certificate of title.  When an owner named in a certificate of title creates a security interest in the vehicle described in such certificate or in any accessory thereon:

(1) The owner shall immediately execute an application in the form prescribed by the department to name the holder of the security interest on the certificate of title, showing the name and address of such holder and deliver the certificate of title, application and the required fee together with a copy of such application which need not be signed, to the holder of the security interest.

(2) The holder of the security interest shall cause the certificate of title, application and fee and the copy of such application to be mailed or delivered to the department.

(3) The department shall indicate on the copy of such application the date and place of filing of the application and return said copy to the person presenting the same.

(4) Upon receipt of the certificate of title, application and the required fee the department shall issue a new certificate in the form provided by [Mich. Comp. Laws § 257.222] setting forth the name and address of each holder of a security interest in the vehicle or in any accessory thereon for which a termination statement has not been filed and the date on which the application first stating such security interest was filed, and mail the certificate to the owner.

Mich. Comp. Laws § 257.238(a).

Next, § 257.222 states the Secretary of State's duty to issue a certificate of title, and what that certificate must contain.  It provides, in pertinent part,

(1) Except as otherwise provided in this act, the secretary of state shall issue a registration certificate and a certificate of title when registering a vehicle upon receipt of the required fees. . . . . . .

(3) **The certificate of title . . . shall contain all of the following on its face**: . . .

(b) If the vehicle is a motor vehicle, the number of miles, not including the tenths of a mile, registered on the vehicle's odometer

15

at the time of transfer.

. . .

(i) **A statement of** the owner's title and of **all security interests in the vehicle** or in an accessory on the vehicle **as set forth in the application**.

(j) The date that the application was filed.

(k) Any other information that the secretary of state may require.

. . .

(5) The secretary of state shall mail or deliver the certificate of title to the owner or other person as the owner may direct in a separate instrument, in a form prescribed by the secretary of state.

Mich. Comp. Laws § 257.222 (emphasis added).

Finally, § 257.219(2) states circumstances in which the Secretary of State must refuse to issue a certificate of title. It provides, in pertinent part:

(2) **The secretary of state shall refuse issuance of a certificate of title** or a salvage certificate of title **upon any of the following grounds:**

(a) The application contains a false or fraudulent statement, **the applicant has failed to furnish required information or reasonable additional information requested by the secretary of state**, or the applicant is not entitled to the issuance of a certificate of title or salvage certificate of title under this act.

(b) The secretary of state has reasonable ground to believe that the vehicle is a stolen or embezzled vehicle or that the issuance of a certificate of title or a salvage certificate of title would constitute a fraud against the rightful owner or other person having a valid security interest upon the vehicle.

(c) **The required fee has not been paid.**

Mich. Comp. Laws § 257.219(2)(emphasis added).

**C. The parties' arguments**

The Trustee emphasizes that under Mich. Comp. Laws § 257.217(10), "[r]eceipt by the secretary of state of a **properly tendered application** for a certificate of title on which a security interest in a vehicle is to be indicated is a condition of perfection of a security interest in the vehicle" (emphasis added). And the Trustee argues that in order to be "a properly tendered application," the title application must meet all of the applicable requirements of Mich. Comp. Laws § 257.217(1) through 257.217(9).

The Trustee argues that the second title application that Art Moran submitted to the Michigan Secretary of State — *i.e.*, the one listing Genisys as the secured party — failed to meet three of the requirements of Mich. Comp. Laws § 257.217, so that it was not a "properly tendered application," and Genisys's security interest was not perfected under § 257.217(10). The Trustee argues that the second title application had the following three defects:

• First, that the application was not "upon an appropriate form furnished by the secretary of state," as required by Mich. Comp. Laws § 257.217(1), because the form submitted was an outdated form bearing the name of the previous Secretary of State, not the current Secretary of State. *See supra* Part III.B.2 of this opinion.

• Second, that the "ODOMETER" box on the application was blank, and the application did not "contain . . . the number of miles, not including the tenths of a mile, registered on the vehicle's odometer at the time of transfer," as required by Mich. Comp. Laws § 257.217(1)(b).

• Third, that the application was not accompanied by a copy of the security agreement, by which the Debtor Erica Klein gave Art Moran a security interest in the Vehicle (which Art Moran

17

then assigned to Genisys).  The Trustee contends that this was required by Mich. Comp. Laws § 257.217(7).[30]

### 1.  The first claimed defect

As to the first claimed defect, it is clear that the second title application was technically not on the then-current form that the Secretary of State was using.  But this is *only* because the form used had the previous Secretary of State's name printed on the bottom.  As Genisys points out, the two forms are otherwise identical.  But the Court finds that the title application submitted by Art Moran was *not* "upon an appropriate form furnished by the secretary of state," as required by § 257.217(1).  Whether this violation of the statute renders the Genisys security interest unperfected is discussed below.

### 2.  The second claimed defect

As to the second defect argued by the Trustee, while the title application did not contain an odometer reading for the Vehicle, Genisys argues that this was not required in this case, under § 257.217(1)(b).  That section requires a title application to "contain . . . the number of miles, not including the tenths of a mile, registered on the vehicle's odometer at the time of transfer."  Genisys argues that the title application at issue was filed only to add its security interest to the existing owner Erica Klein's title to the Vehicle, rather than to obtain a title in the name of a new

---

[30]  In his first written response to Genisys's motion seeking relief from stay and abandonment, the Trustee also argued that "[a]s of now, there is no evidence that the application was accompanied by a fee," as required by § 257.217(1).  (Br. in Supp. of Trustee's Objection to Genisys's Mot. (Docket # 43) at 4).  But the Trustee made no further mention of this argument in his later briefs or during the second and third hearings held on this matter.  The Court finds that the Trustee abandoned this argument.  In any event, the Court finds, from the undisputed facts and stipulated exhibits, that the title application **was** accompanied by the required fee.  The title application itself indicates that it was accompanied by a fee of $15.00.  (*See* Docket # 51, Ex. B, pdf p. 10).  And the fact that the Secretary of State processed this application, by issuing the February 24, 2010 certificate of title and as otherwise described in Part III.B.2-B.3 of this opinion, shows that the application must have been accompanied by the required fee.

18

owner of the Vehicle. Because of this, Genisys argues, this title application did not involve any "transfer" within the meaning of § 257.217(1)(b), and, therefore, there was no requirement to include the Vehicle's mileage on the application.[31]

The Trustee disagrees, arguing that the granting of a security interest in a vehicle by an existing owner is a transfer of an interest in the vehicle, and therefore is a "transfer" within the meaning of § 257.217(1)(b).[32] While neither party has cited any authority on this point, the Court agrees with the Trustee, that the Debtor's granting of a security interest in her Vehicle to Art Moran, which was then assigned to Genisys, was a "transfer"within the meaning § 257.217(1)(b). In common legal usage, the granting of a security interest in property is a "transfer" of an interest in the property. *See, e.g.*, Mich. Comp. Laws § 566.31(1)(l)("transfer" as used in the Michigan Uniform Fraudulent Transfer Act includes the "creation of a lien"); 11 U.S.C. § 101(54)(A) ("transfer" as used in the Bankruptcy Code includes "the creation of a lien"). So Genisys's no-transfer argument is without merit.

At this point, the Court must consider Mich. Comp. Laws § 257.238(a), quoted in Part IV.B.2 of this opinion. That section applies"[w]hen an owner named in a certificate of title creates a security interest in the vehicle described in such certificate." That section applies here. The Debtor Erica Klein was first named as the Owner of the Vehicle in the January 27, 2010 certificate of title — *i.e.*, in the first title, which listed Capital One Auto Finance as a secured party. Erica Klein later created another security interest in the Vehicle, by signing the second purchase agreement with Art Moran, dated February 6, 2010. That agreement created a security

---

[31] *See* Hearing Transcript at Docket # 68, at 3-4.

[32] *See id.* at 13-14.

19

interest in the Vehicle in favor of Art Moran, which Art Moran then assigned to Genisys. So

§ 257.238(a) applied to the second title application that Art Moran submitted to the Michigan

Secretary of State — *i.e.*, the one listing Genisys as the secured party. And that section contains

the following requirements:

> (1) The owner shall immediately execute an **application in the form prescribed by the department to name the holder of the security interest on the certificate of title**, showing the name and address of such holder and deliver the certificate of title, application and the required fee together with a copy of such application which need not be signed, to the holder of the security interest.

> (2) The holder of the security interest shall cause the certificate of title, application and fee and the copy of such application to be mailed or delivered to the [Secretary of State].

> (3) The [Secretary of State] shall indicate on the copy of such application the date and place of filing of the application and return said copy to the person presenting the same.

> (4) Upon receipt of the certificate of title, application and the required fee the [Secretary of State] shall issue a new certificate in the form provided by [Mich. Comp. Laws §257.222] setting forth the name and address of each holder of a security interest in the vehicle or in any accessory thereon for which a termination statement has not been filed and the date on which the application first stating such security interest was filed, and mail the certificate to the owner.

Mich. Comp. Laws § 257.238(a)(emphasis added). The form of the title application used in this

case, which is designated on the form as form TR-11L and entitled "Application for Michigan

Vehicle Title," appears to be either **the** form, or **a** form acceptable to the Secretary of State, by

which a secured creditor may apply to have its security interest noted on the certificate of title

under § 257.238(a). That is, this form is, in the words of § 257.238(a)(1), an "application in the

form prescribed by the [Secretary of State] to name the holder of the security interest on the

20

certificate of title." The Court draws these conclusions from the fact that in this case, when the Secretary of State's office received this title application form from Art Moran, with the wrong Secretary of State's name on it, it retyped and used this same form (TR-11L) for the stated purpose to "Add Lein," and as the basis for issuing the February 24, 2010 certificate of title. (The Court draws these conclusions even though the Secretary of State erroneously failed to note the Genisys security interest on the February 24, 2010 certificate of title.)

Unlike § 257.217(1)(b), § 257.238(a) does not explicitly require that any odometer reading or mileage information be included in the application that it refers to. From this, one might argue that because § 257.238(a) applied to the title application at issue here, there was no requirement for that application to include odometer or mileage information.

Genisys has cited § 257.238(a), in passing,[33] but it has not made this argument. Nor has Genisys disputed that § 257.217(1) through 257.217(10) apply generally to the title application at issue.

The Court concludes that the mileage information regarding the Vehicle was required to be in the title application at issue. But this is not because § 257.217(1)(b) applied to it — it did not — rather, this conclusion is based on § 257.238(a)(1), which did apply. The provisions of § 257.217(1), including the mileage information requirement of § 257.217(1)(b), apply when the owner of a vehicle applies for both a certificate of title and for the registration of the vehicle. By contrast, § 257.217(1) does not apply when a secured creditor applies to have its name put on a certificate of title of an existing owner of a vehicle. In that situation, § 257.238(a) applies, and § 257.217(1) does not apply.

---

[33] *See* Docket # 55 at 4 (citing Mich. Comp. Laws § 257.238(a)(2)).

21

This is clear from the wording of these statutes. First, the opening sentence in § 257.217(1) requires **"[a]n owner of a vehicle** that is subject to registration under this act" to "apply to the secretary of state, upon an appropriate form furnished by the secretary of state, **for the registration of the vehicle and issuance of a certificate of title for the vehicle**." (Emphasis added). Section 257.217(1) goes on to require that "the application shall be accompanied by the required fee," and must "bear the signature . . . of the owner." It then says that "the application shall contain all of the following:." The "following" required items are then listed in subparts (a) through (g) of § 257.217(1), among which is the "number of miles, not including tenths of a mile, registered on the vehicle's odometer at the time of transfer," in § 257.217(1)(b).

When Art Moran first sold the Vehicle to the new owner, Erica Klein, Art Moran used the Secretary of State's form entitled "Application for Michigan Title & Registration/Statement of Vehicle Sale" to apply for a title and registration for the Vehicle.[34] This is the form that listed the First Secured Party as Capital One Auto Finance, and this is the form from which the Secretary of State issued the first certificate of title listing Erica Klein as the owner, dated January 27, 2010. Unlike the TR-11L, discussed above, this application form did not have a legible form number on it, and did not contain the name of any particular Secretary of State. Rather, it had the words "State of Michigan" and "Department of State" printed on it, at the top of the first page. And this form was different in numerous ways from the Form TR-11L. With this form, Art Moran applied, on behalf of Erica Klein, for both a certificate of title and for registration of the

---

[34] *See* discussion in Part III.B.1 of this opinion.

Vehicle in her name.[35]  The registration is the process by which license plates and license tags are

issued for the Vehicle, on an annual basis.  *See* Mich. Comp. Laws §§ 257.217(4); 257.226;

257.227.

Because Art Moran is a dealer,[36] its actions in using this form to apply for a certificate of

title and registration of the Vehicle in Erica Klein's name were required by Mich. Comp. Laws

§§ 257.217(4), quoted above.  That section says, in pertinent part, and with exceptions not

applicable here, that:

> **a dealer selling, leasing, or exchanging vehicles required to be
> titled, within 15 days after delivering a vehicle to the purchaser
> . . . shall apply to the secretary of state for a new title, if
> required, and transfer or secure registration plates and secure
> a certificate of registration for the vehicle . . ., in the name of
> the purchaser.** . ..  The purchaser . . . of the vehicle . . . shall sign
> the application, . . . and other necessary papers to enable the dealer
> or person to secure the title, registration plates, and transfers from
> the secretary of state.  If the secretary of state mails or delivers a
> purchaser's certificate of title to a dealer, the dealer shall mail or
> deliver the certificate of title to the purchaser not more than 5 days
> after receiving the certificate of title from the secretary of state.

(Emphasis added).

By contrast, Art Moran used a different form, namely the Form TR-11L discussed above,

when Art Moran later applied for the second certificate of title in Erica Klein's name, for the

purpose of changing the First Secured Party from Capital One Auto Finance to Genisys Credit

Union.  That form is entitled simply "Application for Michigan Vehicle Title."  That is the form

that ultimately led to the Secretary of State issuing the second certificate listing Erica Klein as the

---

[35]  Docket # 51, Ex. B, pdf p. 14.

[36]  The completed form listed Art Moran as "Dealer."  (Docket # 51, Ex. B, pdf p. 14.)

owner, dated February 24, 2010 (and in which the Secretary of State erroneously stated "None" under "First Secured Party").[37]

Section 257.217(1) did not apply to this second title application, because Art Moran was there applying only to have Genisys's name put on a certificate of title of an existing owner (Erica Klein) of the Vehicle. In that situation, § 257.238(a) applied.

But even though § 257.217(1) did not apply to this second title application, the mileage/odometer information for the Vehicle still was required, under § 257.238(a). This is because (1) § 257.238(a) requires that the application be "in the form prescribed by the department [of State];" and (2) the form that was prescribed by the Secretary of State, Form TR-11L, required that the odometer reading of the vehicle be listed, in the box labeled "Odometer." We know that the second of these points is so because the Secretary of State accepted Art Moran's Form TR-11L, after retyping it on an updated Form TR-11L (with the new Secretary of State's name printed on the form), to issue the new certificate of title dated February 24, 2010. In retyping this form the Secretary of State filled in the odometer reading (which Art Moran's version of the completed form had left blank), based on the Odometer Statement the Secretary had received with the first title application. From these facts, we know that the Secretary of State's prescribed application form to be used under § 257.238(a), was the Form TR-11L, and that the odometer reading was required to be on the application.

Thus, the Trustee is correct, albeit for different reasons, in his argument that the title application at issue was required to contain the Vehicle's odometer reading, and because it did

---

[37] *See* discussion in Part III.B.2 of this opinion.

not, was defective. As with the first defect, discussed above, the question whether this violation of the statute renders the Genisys security interest unperfected is discussed below.

### 3. The third claimed defect

The third defect argued by the Trustee is that the application was not accompanied by a copy of the security agreement, by which the Debtor Erica Klein gave Art Moran a security interest in the Vehicle, which Art Moran then assigned to Genisys, in the same document. The Trustee contends that this was required by Mich. Comp. Laws § 257.217(7).

Initially, the Court notes that while § 257.217(1) and its subparts (a) through (g) did not apply to the title application in question, § 257.217(7) did apply. Unlike § 257.217(1), § 257.217(7) is not limited in its coverage to an owner's application for a certificate of title and registration of a vehicle. Rather, § 257.217(7) applies by its terms to the type of title application at issue here. It applies to any application for a certificate of title that indicates the existence of a security interest. Genysis does not argue otherwise. This section states, in pertinent part:

> An application for a certificate of title that indicates the existence of a security interest in the vehicle . . . , if requested by the security interest holder, shall be accompanied by a copy of the security agreement which need not be signed.

The Trustee argues that the second title application submitted by Art Moran to the Secretary of State — the one that named Genisys as the First Secured Party — must be deemed to have been a request "by the security interest holder" (Genisys) within the meaning of § 257.217(7), such that it had to be accompanied by a copy of the security agreement under which Genisys claimed a security interest. Because the title application was not accompanied by that security agreement, the Trustee argues, the application was defective for failing to comply with § 257.217(7).

25

Genisys argues first that the Trustee is misreading this statute. Genisys says that the requirement to include a copy of the security agreement with the title application applies only if the security interest holder requests that the security agreement be included with the application. And Genisys correctly points out that there is no evidence that Genisys ever made such a request.[38] The parties have cited no cases in support of their competing views of the meaning of § 257.217(7), and the Court is not aware of any cases discussing this statutory provision.

Second, Genisys argues that even if § 257.217(7) did require that the security agreement be submitted with the title application, that defect does not affect perfection, because § 257.217(10) governs perfection, and requires only that a "properly tendered application" be submitted to the Secretary of State. According to Genisys, § 257.217(7) has no bearing on whether an application is a "properly tendered application," because the security agreement is not part of the application, but rather merely something that must accompany the application when so required by § 257.217(7).[39]

The Court agrees with Genisys's first argument, and disagrees with the Trustee's interpretation of § 257.217(7). That section requires that the title application be accompanied by a copy of the security agreement only when the holder of the security interest so requests. This view of the statute is the more natural reading, and it makes more sense than the Trustee's view. Under the Trustee's view, § 257.217(7)'s requirement applies whenever the secured creditor is the party submitting the title application, but not otherwise. But there is no apparent reason why the Michigan legislature would require that a title application be accompanied by a copy of the

---

[38] *See* Hearing Transcript at Docket # 68, at pp. 11-13.

[39] *See id.* at pp. 10-12.

security agreement whenever a secured creditor submits the title application (as the secured creditor does in the situation covered by Mich. Comp. Laws § 257.238(a)(1) and (2)), while *not* requiring this when it is the vehicle owner or a dealer submitting the title application (in situations covered by Mich. Comp. Laws § 257.217(1) and (4), respectively). The Court concludes that this could not have been the legislature's intent. Rather, the legislature's intent, which is apparent from the wording of § 257.217(7), was that whenever a title application is submitted for a vehicle that is subject to a security interest, the secured creditor may require the party submitting the application, whether that party is the owner, the dealer, or the secured party, to submit a copy of the security agreement with the application. Genisys's view of § 257.217(7) is the correct one.

In this case, the Court will assume, for purposes of decision, that the Trustee is correct in arguing that when Art Moran submitted the second title application to the Secretary of State, it did so on behalf of the new holder of the security interest, Genisys. But the Court concludes that § 257.217(7) did not require that a copy of the security agreement accompany the application, because Genisys did not request that the security agreement accompany the application.

### 4. Section 257.217(10) and the issue of substantial compliance

For the reasons discussed above, the Court concludes that the title application at issue was defective in two of the three ways argued by the Trustee — namely, (1) the application was not "upon an appropriate form furnished by the secretary of state," as required by Mich. Comp. Laws § 257.217(1), but only because the form submitted had the prior Secretary of State's name printed on the bottom; and (2) the application did not contain the Vehicle's odometer reading, but rather left that part of the application form blank.

27

The next question is whether these two defects in the title application mean that the application was not a "properly tendered application," within the meaning of Mich. Comp. Laws § 257.217(10), such that Genisys's security interest was unperfected.

As the Trustee points out, subsection (10) was added to § 257.217 in 2005. Before that addition, the other relevant statutory provisions discussed in this opinion, including the rest of § 257.217 and § 257.238, as well as the Michigan Uniform Commercial Code provisions quoted in part IV.B.2 of this opinion, were in effect in Michigan, and were discussed in several cases, including those cited below. But the parties have cited no case, and the Court is not aware of any reported case, discussing subsection (10) of § 257.217, and its requirement of a "properly tendered application."

Genisys argues that even if the title application at issue had the defects argued by the Trustee, the defects were minor, and the title application substantially complied with the statutory requirements.[40] Genisys argues that such "substantial compliance" is sufficient to make the title application a "properly tendered application" within the meaning of § 257.217(10). As a result, Genisys argues, its security interest was perfected.

The Trustee disagrees, and argues that substantial compliance is not enough. According to the Trustee, any of the defects in the title application that he cites mean that the title application was not a "properly tendered application."

---

[40] Genisys made this argument after the Court raised the question whether substantial compliance with Mich. Comp. Laws § 257.217 was sufficient for perfection. The Court allowed the parties to brief this issue, and then held the third and final hearing on this dispute.

28

There is at least one reported case that held that "substantial compliance" is sufficient to perfect a security interest in a vehicle under the Michigan statutes. In *In re National Welding of Michigan, Inc.*, 61 B.R. 314, 317 (W.D. Mich. 1986), the district court held that:

> [T]he strict compliance doctrine does not apply to the perfection of security interests in vehicles governed by the Michigan Certificate of Title Statute (Mich.Comp.Laws § 257.217). Rather, all a secured party must do is "substantially comply" with the provisions of that Act.

(citation omitted). But as the Trustee points out, the *National Welding* case was decided long before the 2005 adoption of § 257.217(10)'s "properly tendered application" requirement. Rather, Michigan law at that time of the *National Welding Case* merely required that there be "compliance" with the then-existing versions of Mich. Comp. Laws §§ 257.217 and 257.238. *See* 61 B.R. at 316, quoting former Mich. Comp. Laws § 440.9302.[41] But in this statutory context, *National Welding* held that "substantial compliance" was sufficient.

It is fair to note, as the Trustee points out, that the *National Welding* case was quite different from this case. In *National Welding*, the court held that certain vehicle leases were actually security interests rather than true leases, and this created a perfection problem, according to the Chapter 11 debtors in possession. The problem was that the certificates of title for the vehicles all listed the secured creditor (*i.e.*, the nominal lessor) as the owner of the vehicles, rather than as a secured party. And the titles all indicated that there were no secured parties. In finding that the security interests were nonetheless perfected under the Michigan statutes, the court in *National Welding* relied heavily on the fact that any party looking at the certificates of

---

[41] The comparable U.C.C. provision requiring such "compliance" is now found in Mich. Comp. Laws § 440.9311(2), quoted in part IV.B.2 of this opinion.

title for the vehicles would see that the secured creditor (the nominal lessor) had an interest in the vehicles. Because the titles themselves showed this, the court held that the fact that the secured creditor was listed on the titles as the owner rather than as a secured creditor did not defeat perfection.

By contrast , in this case the certificate of title for the Vehicle gives no indication of Genisys's security interest, or that Genisys or anyone else, other than the owner, has any interest in the Vehicle.

The only other case cited by the parties on the subject of substantial compliance is *Remes v. Ford Motor Credit Co.* (*In re Churchwell*), 80 B.R. 855 (Bankr. W.D. Mich. 1987), cited by the Trustee. But that case did not discuss the issue of substantial compliance, and was unlike this case. In *Churchwell*, the secured creditor initially obtained a perfected security interest in the debtors' vehicle, and a certificate of title was issued with the security interest correctly noted on it. The vehicle was owned jointly by a husband and wife. The problem arose after the secured creditor agreed to allow the joint owners to transfer the vehicle from their joint ownership to just one of them, the wife. The secured creditor consented to this in writing. But when the owners applied for a new title, the application (Form TR-111) did not list the secured creditor's interest, and the new certificate of title indicated that there were no secured parties. The wife then filed bankruptcy. The court found that the security interest was unperfected, because the title application in question did not designate the creditor as a secured party.

Not surprisingly, the issue of substantial compliance did not come up in *Churchwell*, since the title application in that case did not mention any secured creditor at all. So this makes *Churchwell* quite different from the current case. The court in *Churchwell* itself stated that

"[t]his decision does not address a situation when the secured creditor is listed on the application but *not* on the subsequently issued title."  80 B.R. at 860 n. 7.

In this case, the Court concludes that it is appropriate to use the "substantial compliance" doctrine employed by the court in *National Welding,* in deciding whether Mich. Comp. Laws § 257.217(10) is satisfied.  This is consistent with the "properly tendered application" wording of § 257.217(10).

The Court concludes that the title application in this case was a "properly tendered application" within the meaning of § 257.217(10), and because of that, the application achieved "compliance" with the applicable provisions of Mich. Comp. Laws §§ 257.217 and 257.238, as the word "compliance" is used in Mich. Comp. Laws § 440.9311(2).

This is so despite the fact that the application had the two defects identified above.  Those defects were technical and very minor.  The application clearly designated Genisys as the First Secured Party.  The only reason a certificate of title listing Genisys as a secured party was not issued was because of an inadvertent error by the Secretary of State's office, as discussed in Part III.B.3 of this opinion.

There is no reason why either of these minor defects in the title application should have or would have precluded the Secretary of State from issuing a certificate of title that listed Genisys as a secured party.  In fact, neither of these defects precluded the Secretary of State from issuing such a certificate of title.

The minor defects in the application did not cause the Secretary of State's error in this case.  In fact, when the Secretary of State's office undertook to retype the application form, it *cured* the two defects at issue — the retyped form had the correct (current) Secretary of State's

31

name printed on the bottom, and it added the missing odometer reading. And on the retyped form, the Secretary of State's office even noted that a lien on the vehicle was to be added, when it typed the words "ADD LEIN" in the Reason for Tax Exemption box.

Under the circumstances, the defects in the title application were immaterial, and the application was a "properly tendered application" within the meaning of § 257.217(10). As a result, Genisys's security interest in the Vehicle was perfected under Michigan law, and the Trustee cannot avoid Genisys's lien under 11 U.S.C. § 544(a). Genisys is entitled to all of the proceeds from the Trustee's sale of the Vehicle, minus the undisputed surcharge amount of $415.60.

## VI. Conclusion

The Court will enter an order consistent with this opinion.


Signed on December 21, 2012                    /s/ Thomas J. Tucker
                                               **Thomas J. Tucker**
                                               **United States Bankruptcy Judge**